JOHN A. GAUGER & COMPANY *v.* SAWYER & AUSTIN LUMBER COMPANY.

Opinion delivered December 14, 1908.

1. EVIDENCE—BURDEN OF PROOF.—Where, in an action for the breach of a contract, the defendant alleges in defense a breach of the contract by plaintiff, the burden is on plaintiff to show that he complied with the terms of the contract in the particulars alleged, and that defendant broke the contract. (Page 429.)

2. SALES OF CHATTELS—RESCISSION—WAIVER.—Where, in a suit for breach of a contract of sale of chattels, defendant set up a counterclaim alleging certain breaches of the contract by the plaintiff, all breaches committed by the plaintiff which are not set up in such counterclaim will be considered as waived. (Page 430.)

3. SAME—CONSTRUCTION OF CONTRACT.—Where a manufacturer of doors and windows in the month of February, 1904, accepted an order for from 7,500 to 10,000 doors and as many windows as might be required by the vendee from time to time during the year 1904, and, after making some orders during the year which were filled, the vendee sent in additional orders during the month of December, 1904, for 7,862 doors and 46,300 windows, the manufacture of which would have required five months, the manufacturer was not in default in failing to fill the latter orders. (Page 431.)

4. SAME—RESCISSION.—A refusal by one party to a contract to perform his part of it justifies the other in treating is as rescinded. (Page 431.)

5. SAME—BREACH.—Where a vendee refused to pay sums due to the vendor, who was not in default, unless he would give assurance that he would perform the contract in certain respects, such refusal justified the vendor in treating the contract as rescinded, and in suing to recover the amount past due. (Page 433.)

Appeal from Jefferson Circuit Court; *Antonio B. Grace,* Judge; affirmed.

## STATEMENT BY THE COURT.

The appellant, John A. Gauger & Company, of Chicago, is a general sash and door dealer and distributor; and the appellee, the Sawyer & Austin Lumber Company, of Pine Bluff, Arkansas, is a manufacturer of lumber, sash and doors.

Appellant wrote to appellee, asking for prices on doors and sash. Appellee in reply wrote appellant, January 30th, 1904, giving prices and saying: "We will agree to furnish you from 7,500 to 10,000 doors at the above quotation, minimum amount to be 7,500, and would agree to furnish all the open sash you wish at prices named." In reply to this appellant wrote to appellee February 3, 1904: "We have your letter of January 30, and you may book our order contract for yellow pine doors and open windows covering our requirements during the present year of 1904, as we need the stock from time to time. We to take from 7,500 to 10,000 doors, and as many open windows as we may require during the year." In answer to this appellee wrote to appellant, February 5, 1904, as follows: "Your favor of 3d inst. at hand, and we entered your order for 7,500 to 10,000 doors and what open sash you may need during the life of this agreement at the following prices," etc. The terms named were sixty days net, or 2 per cent. off for cash in ten days from date of invoice after deducting freight.

The parties entered upon the performance of the contract, and the correspondence that followed showed that appellant made numerous and large orders of sash, and that appellee did not ship same as promptly as appellant claimed the contract required. Appellant complained of this to appellee, and claimed that it was being damaged on account of appellee's failure to ship the sash as promptly as it should. Appellee, on the other hand, sent in its statement of past-due indebtedness of appellant on orders that had been filled, and urged appellant to pay this indebtedness, and complained because it did not do so. Appellee also urged appellant to send in more orders for doors, and complained that appellant was not making orders for doors as it should, and that

if it had received larger orders for doors it would have been enabled to fill the orders for sash more promptly. Notwithstanding these reciprocal complaints, appellant continued to send in its orders (the orders for sash largely predominating), and appellee continued to bill same and to ship same, it claims, as rapidly as it could under the circumstances, fire having occurred which destroyed a part of the machinery, and which necessitated a cessation in the operation of appellee's plant from about the 22d of September, 1904, till about the 15th of October, 1904. On October 10th appellee notified appellant that in three or four days it would be in shape "to handle orders as heretofore." On October 17th appellee wrote appellant "that there is rather a large amount past due on account; we are needing all the money we can collect at the present time, and will appreciate an early remittance." October 31st appellant asked appellee "to advise by return mail how soon we may expect shipment of our orders with you, and just what we may depend upon." November 2 appellee replied: "We have enough windows now for a car, and have ordered in an empty for it, which will be loaded as soon as set in on our track. Will advise further what to expect in the way of future shipment in a day or two." In a letter to appellee November 14th, appellant asked appellee "to advise promptly by return mail whether you will protect us on say ten thousand doors on the basis of your present contract with us to be specified between this time and April 1st next." To this appellee replied Nov. 17th: "We find that you have ordered on your contract 1,851 doors, and we are ready to ship the balance at any time that you will send us specifications. We have been urging you at different times to send us an order for these doors. We wish to fill the entire contract order by January 1, 1905. When the first contract is filled, we will be glad to take up the matter of one for 1905." To this appellant replied Nov. 21, 1904: "You have not fully replied to our letter of the 14th. We tried to make it clear to you that we wanted to take all the doors that we thought we could specify this season when we contracted with you, and explained that while we can sell, we think, several car loads of yellow pine doors, it may be that we cannot get specifications so that we can send them in to you until after January 1st. Possibly some of the doors we can specify, but there will be a good many we cannot specify until

during January and February next. Would it not be satisfactory to you to send our specifications between this time and March 1st for yellow pine doors with you? We do not expect that you contemplate advancing your prices to us on yellow pine doors for 1905, as we have already been solicited by several Y. P. door manufacturers, and we think we would have no trouble in contracting for 1905 at exactly as low prices as we are now paying you. We want to continue doing business with you, and wish you would again read our letter of the 14th and write us more fully on the subject, and oblige."

To this appellee replied: "We have your favor of the 21st inst., and we think we replied to your letter of the 14th in full. We simply expect you to take the doors according to your contract, and expect you to send us specifications by January 1st. When the first contract is filled, we will be glad to take up the matter of one for 1905. You have been holding us to the sash part of the contract, and we shall expect you to live up to it on the door proposition as well." On December 5 appellant wrote appellee "inclosing an order for 26,800 sash, and promising to "send memorandum of the balance of doors due to make up the 7,000 very shortly," and saying, "We fully intended to carry out our part of the contract some time ago, but were in a position where we had to buy considerable goods elsewhere closer. We will surely give you specifications for our entire contract during the year." The appellee, on December 9, returned the order for 26,800 sash, saying: "Your orders now on file will take all the sash we can furnish between now and the time of our annual shut-down for repairs, and, as we are not prepared to accept order for 1905 delivery, we return the order forthwith," and the letter asked appellant to send in specifications for doors due it promptly, so that appellee might make as large shipment of these as possible before it "shut down." To this appellant replied, returning the order for the sash and insisting on appellee's booking and filling the order, saying the contract showed they were entitled to this, and promising to "send specifications for doors shortly." Appellee, December 14, again replied by returning the order for sash, and reminding appellant that it had promised to take 7500 doors during the year 1904, and urging it to "send in specifications for these doors at once." From December 14th till the 31st appellant

almost daily sent in to appellee orders for doors, amounting in the aggregate to 7,862 doors, and on the 26th of December it also sent in an order for 18,500 sash. The amount of sash orders from December 6 to December 26, inclusive, amounted to 46,300. Appellee made no further reply to appellant's order for sash on December 5 than that stated in its letter of December 9, and made no reply to the letters containing orders for doors and sash after December 14th. On December 28 appellee wrote appellant as follows: "Our books show a balance due us of $1641.57, all of which is past due except the last car shipped you, amounting to $642.07. This leaves a balance past due of $999.50, and we have this day placed draft in bank against you for this amount. Trusting you will honor on presentation, we remain," etc. On December 31, appellant wired and wrote appellee asking for acknowledgment of the receipt of its orders for doors sent appellee within the last two weeks, also for sash and for full assurance of shipment "according to the terms of the contract." These were followed by letter of January 4, 1905, referring to and reciting these orders, and urging shipment of same, and adding: "Your draft on us for collection covering a portion of your account which is now due we have requested the bank to hold until we receive acknowledgments from you covering all the orders we have mailed you since December 1, with the assurance from you that all orders will be shipped with reasonable promptness based on our recent contract. We are prepared to pay your account as it matures just as soon as we receive your acknowledgments of our orders and positive assurance that the goods will be shipped." And on the 12th, another letter urging shipment of certain orders, designating them.

On January 16 appellee sent appellant this telegram: "We hereby cancel all your orders on file with us on account of your violation of contract as regards settlements;" also letter confirming telegram, and adding: "We will dispose elsewhere of what stock we have made for you."

This was all the correspondence directly between appellant and appellee, but on February 6, 1905, W. T. Young, attorney for appellant wrote Mr. Danaher, attorney for appellee, to the effect that appellee was due appellant for 7,862 doors as per orders from December 14 to 30, 1904, and for 46,300 sash as per orders

of December 6 and 26, 1904.  And, after declaring that appellee had repudiated the contract, and that appellant had not refused to make payments for past shipments, but had only delayed same till appellee could acknowledge receipt of appellant's orders, the letter expressed a willingness on the part of appellant to make payments of appellee's accounts promptly, provided it could get a fulfillment of the whole contract on the part of appellee. The letter then tendered the sum of $1560.07 in full payment of the account with appellee, upon the condition that, if appellee accepted same, it should fill the orders for sash and doors as per statement of the orders for same as set forth in the letter.  In answer to this Mr. Danaher, as attorney for appellee, in letter of February 14, 1905, replied that appellee was then and had been at all times ready and willing to comply fully with the terms of its contract with appellant, provided appellant complied with its part of the contract. He then demands of appellant the sum of $1710, as the amount long past due appellee.  In answer to this, Mr. W. T. Young, attorney for appellant, handed Mr. Danaher, attorney for appellee, a letter in which appellant made a tender of $1710.69 to appellee, saying: "While we do not contend that we owe this amount, yet, for the purpose of showing our absolute willingness to comply with every part of the contract, we have concluded to grant your request," and concluding: "Your acceptance of the money herewith tendered will bind you to carry out all the terms, conditions and stipulations of the contract, and a prompt shipment of the orders heretofore placed with you upon the terms and conditions above mentioned."  This letter was indorsed by Mr. Danaher as follows: "This letter was handed to us by W. T. Young, on March 3, 1905, and we agreed to accept said sum of $1710.69 under the terms mentioned in the letter. Young then refused to pay us the money unless we would deliver to him bill of lading for two cars of sash and doors." There was evidence to the effect that when sash and doors were ordered in such large quantities as those given by appellant to appellee in the month of December, it would take five months to fill same, in the natural course of trade, and there was no evidence to the contrary.

On March 3, 1905, appellee sued appellant in the Jefferson Circuit Court, alleging that appellant was indebted to it in the

sum of $1710.69 for lumber and lumber products sold and delivered to appellant. Appellant answered, denying that it owed appellee $1710.69, but admitting that it was due appellee the sum of $1500.07 for lumber and timber products purchased of appellee under contract dated February 3, 1904. Appellant then set up the contract with appellee, and averred that appellee and appellant "operated under said contract in accordance with the terms thereof until the latter part of 1904, when the plaintiff ceased to acknowledge receipt of orders and specifications sent it by defendant or to manifest a disposition of carrying out its contract by manufacturing and shipping the orders so received by it." Appellant by way of counterclaim set up that appellee had failed to fill orders for 46,300 windows and 7,862 doors under the contract, and that it was damaged thereby in the sum of $2778.54, for which amount, less the sum of $1,560, admitted to be due appellee, appellant asked for judgment. Appellee denied all material allegations of the cross complaint, and set up the contract from its viewpoint.

The above were substantially the issues and the facts except on the question of appellant's damage, which, in the view we have taken, it is unnecessary to state. The cause was tried by the court sitting as a jury, and its judgment on the facts and law was in favor of appellee in the sum of $1,936.67, to reverse which this appeal is prosecuted.

*Young & Rowell,* for appellant.

1. Appellee was not in law justified in cancelling the contract by reason of appellant's failure to pay its draft of $999.50. 51 L. R. A. 791. Defaults by one party in making particular payments or deliveries will not release the other party from his duty to make the other payments or deliveries stipulated in the contract, unless the conduct of the party in default be such as to evince an intention to abandon the contract, or a design no longer to be bound by its terms. 47 N. J. L. 290; 9 C. P. 208; L. R. 9 Q. B. Div. 648, L. R. 9 App. Cas. 434; 115 U. S. 188, 29 L. Ed. 366; 2 Allen (Mass.), 492; 40 N. J. Eq. 612; 65 Ia. 390; 38 Mo. App. 201; 25 Am. Rep. (N. Y.), 203. Covenant of payment was not a condition precedent in this case. 17 Geo. III, 1 H. B. 1, 273, note a; 4 Ad. & El. 599. In rescinding as in making con-

tracts, the rule is that both parties must concur. 2 Barn. & Ad. 882; L. R. 9 C. P. 208. See also 49 N. W. 529; 2 Benjamin on Sales § 909; 69 N. Y. 348; 26 Ark. 309; 56 Ill. App. 165; 30 L. R. A. 33; Benjamin on Sales, 7 Ed. (Bennett's), § 593 pp. 579, 582; *Id.* p. 604, tit. "Successive Payments."

2. In this case special damages would lie, and the true rule in estimating same would be the difference between the contract price and the price appellant had to pay for similar goods to fulfill its contracts with other parties, even though it exceeds the market value at the time of the purchase by appellant. 71 Ark. 408. See also 23 Ill. App. 17; 57 L. R. A. 203.

*Austin & Danaher,* for appellee.

1. It is in proof, undisputed, that an order the size of those given by appellant after December 1, 1904, could not in the ordinary course of business have been filled in less than five months. It can not be questioned, therefore, that appellee had the right to refuse such orders. Sash that appellant "may require during the year" has reference to sash to be delivered during that year, whereas the construction of the contract to mean that appellants could, as they contend, order up until the end of the year would mean an extension far into the year 1905, and beyond the intention of the parties.

2. If a buyer not only refuses to pay for one installment, but puts his refusal on such ground as justifies the inference that he repudiates the entire contract, or insists upon new terms differing from the original agreement, the vendor may be released from any subsequent delivery. Am. note to Part 1, Book IV., Benjamin on Sales, 1888 Ed., 558, 559; 59 Md. 131; 2 B. & Ad. 882; 15 C. B. N. S. 711; 6 Wall. 561; 15 Fed. Cas. 222; 100 Cal. 504; 119 Cal. 275; 28 Fla. 89; 59 Md. 155; Rose's Notes, 891; 77 Md. 331. The purchaser can not withhold payments that are due for goods delivered in order to see that the seller will deliver other consignments. 110 Pa. St. 236; 21 N. Y. 399; 4 Seld. (N. Y.), 512; 44 Ill. 339; 30 Me. 258; 5 N. H. 307; 12 R. I. 82. See also 30 N. Y. St. Rep. 315; 114 N. Y. 640; 123 N. Y. 382; 16 Wend. (N. Y.), 638; 24 *Id.* 60-62; 4 N. Y. 411; 134 N. Y. 92.

WOOD, J., (after stating the facts.) First. The burden of proof is upon the appellee to show that it is entitled to recover.

Therefore it must show that it had complied with the terms of the contract on its part in the particulars in which appellant alleges that it violated the terms thereof, and it must further show that appellant breached the contract on its part, giving the appellee the right to treat the contract as rescinded, and to sue for the damages resultant. It will be observed that appellee seeks to recover only for amount alleged to be due for doors and sash furnished. It does not ask to recover for loss of profits. Appellant says in its brief "that it had ample excuse in fact and in law for not paying the draft, and it avers that in hardly any respect did the appellee comply with and fulfill its obligations to appellant under the terms of the contract." But if there were any breaches of the contract on the part of appellee other than those mentioned in appellant's cross complaint, it has failed to set them up, and has therefore waived same. Then the first question is, did appellee violate the terms of its contract in failing to fill the orders for the 46,300 windows and 7,862 doors? The uncontroverted proof shows that these could not have been manufactured by appellee after they were ordered, in the usual course of trade, before the year 1904 had expired. It would have taken some five months to manufacture same, and these orders were sent and received after the first of December, 1904. The contract expired with the year 1904. The contract contemplated the manufacture of the sash and doors by appellee during the year 1904. Appellee manufactured the lumber products it sold. Appellant fully understood this, and must be held to have contracted with appellees accordingly. Therefore appellant could not insist on appellee's filling orders that appellant delayed in sending until it was too late for same to be manufactured by appellee in the usual course of its business. Any other construction of the contract would be unreasonable. For if appellant could have delayed till the last day of December, 1904, in sending in its orders for the doors and windows, it was possible for it to have kept appellee manufacturing same during the year 1905, as well as "during the year 1904." The language of the letters evidencing the contract does not warrant such construction, and certain letters of appellant in the record, practically asking an extension of the contract of 1904 into the year 1905 on the same terms as to the doors, show that appellant itself understood that the contract for filing its orders ex-

pired with the year 1904. So we are of the opinion that the evidence warranted the finding of the court that "the plaintiff (appellee) fully performed all things required of it by the contract."

On the other hand, appellant, while urging with zeal that appellee fill its orders for sash, treated with apparent indifference the provision which bound it to take at least 7,500 doors during the year 1904. The contract called for the manufacture of both sash and doors. Appellant could not insist on the one and reject the other, yet the proof shows that as late as November 17, 1904, appellant had only ordered 1851 doors, and there was no acceleration of appellant's movements in this particular until its request to be allowed to send in specifications for doors to be delivered in 1905 had been refused. The delay of appellant to send in the orders and specifications for doors until it was too late for them to be manufactured and delivered during the life of the contract was tantamount to a failure or refusal to take the number of doors appellant was bound to take. Although repeatedly urged to do so, appellant took no heed of the requirements of the contract on its part to order the doors in time, and this conduct on its part, it seems to us, was in violation of both the letter and spirit of the contract. It was very unequal and unfair to appellee. When we consider this fact in connection also with the fact that appellant, although urgently requested, neglected to meet its payments as the contract required, and allowed large amounts to become past due, we must conclude that appellant is not without fault. Certainly, appellant was in no attitude to be insisting on the other party to the contract "giving bond for its good behavior," so to speak, before appellant would do what the contract required on its part. But appellee agreed to waive these breaches and to fill appellant's orders, notwithstanding the contract had expired, if appellant would pay the amount past due.

Second. The appellant refused payment of this amount, or indeed of any amount which it admitted to be due under the contract, unless appellee would give assurances that it would do what it promised, delivering to appellant bill of lading for two cars of sash and doors. Did this constitute such a breach or abandonment of the contract on the part of appellant as would justify appellee in treating the contract as rescinded except for the pur-

pose of declaring on it for amount that was past due? The precise question was ruled in the affirmative in *Harris Lumber Co. v. Wheeler Lumber Company, post* p. 491, and authorities are there cited to sustain the doctrine announced. We are aware that a different rule obtains in other jurisdictions, and we are cited by the learned counsel for appellant to the exhaustive and well-considered opinion of the Supreme Court of Michigan in *West* v. *Bechtel,* 51 L. R. A. 791, where the authorities, English and American, are reviewed, and just the opposite conclusion is reached to the one we have announced. We have carefully considered this case and other cases cited in appellant's brief, among them the case of *Lake Shore & Michigan Southern Ry. Co.* v. *Richards,* 30 L. R. A. 1, where there is a very extended and valuable note on the "right to rescind and abandon contract because of other party's default." In the latter case, although upon a different state of facts, the court announced this principle, quoting syllabus: "A breach of contract which will justify the party not in default in abandoning performance and suing for damages on account of a breach by the other need not be of such a character as to render the further execution of the contract by him impossible; but if the other party refuses to treat it as subsisting and binding upon him, or by his acts and conduct shows that he had renounced it, and no longer considers himself bound by it, there is in legal effect a prevention of performance by the other party." This principle is sound, and, as we view the facts of the case at bar, is applicable here. In *King* v. *Faist,* 161 Mass. 449, the facts were that "by the terms of a contract for the sale and delivery of a quantity of flour, the vendor was to ship the flour specified as the vendee might direct, drawing upon him demand drafts for the flour shipped, and the vendee was to take out the flour by a certain date and to honor the drafts. A month before the time limited for withdrawing the flour the vendee wrote to the vendor, "Before we pay any more drafts we want some assurance from you that you will make good any claims on acount of quality," and stated orally to the agent of the vendor that he would pay no future drafts without some guaranty to protect him in case flour should on arrival prove deficient in quality and he returned draft of the vendor unpaid. The vendor thereupon wrote: "We are not going to send any more flour." It was

held "that the vendor had a right to rescind the contract, the vendee having, without justification, declared his intention not to perform it, and that the letter of the vendor was an effectual rescission, and relieved him thereafter from all obligation under the contract to deliver the flour." As to whether or not there has been a breach of contract by one of the parties to it that will warrant the other in treating it as abandoned will depend upon the facts of each particular case as they may arise. But we are of the opinion that the doctrine we have announced in this and the case of *Harris Lumber Co.* v. *Wheeler Lumber Co., supra,* is sound and based on better reason that a contrary rule grounded on similar facts. The doctrine, too, is but in line with *Miller* v. *Thompson,* 22 Ark. 258, where we held that "a refusal by one party to perform his part of a contract justifies the other in treating it as rescinded, and authorizes him to sue in general *indebitatus assumpsit;*" and with *Ward* v. *Kadel,* 38 Ark. 174, where we said: "Where there is a mutual contract for the performance of successive acts, the refusal upon one side to perform will justify the other party in treating the contract as rescinded." See also the recent case of *Spencer Medicine Co.* v. *Hall,* 78 Ark. 336. In that case Judge McCULLOCH quoted the language of Coleridge J., in *Franklin* v. *Miller,* 4 A. & E. 599 as follows: "Each load of straw was to be paid for on delivery. When the plaintiff said that he would not pay for the loads on delivery, that was a total failure, and the plaintiff was no longer bound to deliver. In such a case it may be taken that the party refusing has abandoned the contract." See also *Wiegel* v. *Boone,* 64 Ark. 228; *Missouri Pacific Ry. Co.* v. *Yarnell,* 65 Ark. 320.

Third. Upon the whole record the judgment of the court is clearly right, and it is therefore affirmed.