MAJESTIC MILLING COMPANY *v.* COPELAND.

Opinion delivered January 10, 1910.

1. SALES OF CHATTELS—BREACH.—A vendee cannot complain of his vendor's failure to ship the articles sold if he failed to furnish shipping directions therefor. (Page 204.)

2. SAME—WHEN BROKEN.—In order for one party to a contract of sale to be justified in treating it as broken by the other, there must have been a distinct and unequivocal intention, manifested either by words or conduct of the other, not to perform the contract. (Page 204.)

3. SAME—DELAY IN PERFORMANCE—WAIVER.—Delay on the part of the vendor of chattels in making delivery during the time specified in the contract was waived where the vendee consented to such delay. (Page 204.)

Appeal from Craighead Circuit Court; *Frank Smith,* Judge; reversed.

*Hawthorne & Hawthorne,* for appellant.

This suit was instituted on the theory that plaintiff had given specifications for all the flour, and that defendant had refused to

ship. On the trial of the cause it developed that all specifications given by plaintiff were promptly filled, except the Jericho car, which was cancelled by plaintiff, and the Paragould car, which was delayed by defendant for a time, but promptly shipped after a slight change in the specifications by plaintiff. The court then permitted plaintiff to change his theory and amend his allegations so as to predicate a breach on the defendant's part upon the failure to ship the Paragould car promptly. Although this was error, the evidence failed to establish a breach by defendant, even under this theory. Benj. Sales, § 568; 33 Pac. 266; 39 S. E. 410. Moreover, if it be conceded that defendant did breach the contract, plaintiff did not elect to declare a breach and sue for his damages. By waiving the delay, plaintiff lost his right to maintain an action for the failure to ship until he could show that he gave specifications for all the cars called for by his contract. 178 U. S. (44 L. Ed.) 953; 7 Atl. 98; 55 Atl. 599; 52 S. E. 829; 15 Wall. 36; 30 L. R. A. 33 and notes; 85 Ark. 596; 87 Ark. 52; 101 S. W. 128; 147 Fed. 532; 4 Ark. 532. Defendant had the entire sixty days in which to ship the flour, under the contract. It could not be guilty of a breach until it failed to ship within that time. 117 U. S. 490; 21 Ohio 114; 61 N. Y. 643; 75 Pa. 138; 18 Ill. 155.

*Lamb & Carraway*, for appellee.

1. Defendant violated the contract by disabling itself from performing it. Beach, Cont. § 403; 2 Mechem on Sales, 1097; 13 Minn. 264; 43 N. J. L. 512; 93 N. Y. 576; 54 Cal. 228; 76 Md. 9, s. c. 20 Atl. 127; 111 U. S. 264; 121 U. S. 264; 103 U. S. 146; 72 Atl. 301. Plaintiff was not thereafter under obligation to give further shipping directions or to tender performance in any way. 92 Ark. 111; 13 Minn. 264; 53 N. Y. 115; 43 N. J. L. 511; 93 N. Y. 576; 17 Kan. 271. Defendant by its contract rendered it practically impossible for plaintiff to proceed further under the contract. 85 Ark. 596.

2. Appellee did not waive the breach of which appellant was guilty. Appellee's leniency cannot be construed as a waiver. 2 Mechem on Sales, 1071-4; 15 Ia. 555; 81 N. Y. 419; 47 N. E. 1020; 104 U. S. 252; 41 N. E. 561. Nor was his acceptance of appellant's deficient performance so unconditional and voluntary as to constitute a waiver. 2 Mechem, 1078; 72 N. W. 25; 65 N. W. 980; 39 N. E. 814, 17 C. C. A. 34; 5 N. D. 432, s. c. 67 N. W. 208. Whether or not appellant broke the contract, and

whether or not appellee waived the breach, were proper questions for the jury, and their finding supported by ample evidence, is conclusive.  67 N. W. 208.

3.  Appellant's theory of the case is erroneous, and the rulings of the court as to instructions were correct.  55 Atl. 599.

McCULLOCH, C. J.  Plaintiff, Rudy Copeland, was engaged in business at Jonesboro, Ark., under the trade name and style of Copeland Commission Company, and defendant, Majestic Milling Company, was operating a flouring mill at Aurora, Mo.  On February 16, 1907, plaintiff gave a written order, which was accepted by defendant, for one thousand barrels of flour, said order being in the following form:

"Majestic Milling Company,                          2-16-07.
    "Ship to Copeland Commission Company at Jonesboro, Ark.
        How ship:  60-day shipment.
        Terms:  Net A-L Att.              Amt. $.........
        1,000 Bbl Flour                          Base
        Majesty ........................48        3.70
        Show Me ........................48        3.30
        Uncle Joe ......................48   ,    2.70
        Prince .........................48 Base   3.60
    "Draw through Bank of Jonesboro.
        "D. R. Bradford.  Copeland Com. Co.
                                "By Rudy Copeland."

D. R. Bradford was defendant's agent and solicited the order. There is no controversy as to the construction of the contract; it being conceded that, according to its terms, the flour was to be shipped within sixty days from date thereof.  And it was understood that, in accordance with plaintiff's method of doing business, the flour was to be shipped to his order in carload lots, whenever he gave shipping directions from time to time.

About the time this contract was entered into, plaintiff was given the exclusive right to sell defendant's flour in certain territory in northeastern Arkansas and southeast Missouri.  Another contract for one thousand barrels of Majesty, the higher grade of flour, was entered into February 22, 1907, but no directions were ever given for shipments under that contract, and that feature of the case passed out in the trial below, and there is no controversy here concerning it.  Defendant delivered a part of the flour—360 barrels—under the contract of February 16, and this

action was instituted by plaintiff to recover damages for an alleged breach of the contract on the part of defendant in failing and refusing to deliver the remainder. Plaintiff recovered judgment below, and defendant appealed.

The point at issue in the trial below was whether or not defendant failed or refused to deliver the flour in accordance with the contract. Plaintiff contended that defendant was unable to perform the contract and refused to do so. On the other hand, defendant contended that the failure to deliver the flour was due entirely to plaintiff's failure or refusal to give shipping directions.

The evidence shows that the grade of wheat used by defendant produced three grades of flour, which were branded "Majesty," "Show Me" and "Uncle Joe," the proportion being 80 per cent. Majesty, 17 per cent. Show Me, and 3 per cent. Uncle Joe. It became necessary, therefore, for defendant to adjust its sales so as to conform to the proportion in which the several grades of flour were produced, otherwise the capacity of the mill would be overtaxed, and storage space become congested with unsold grades. The capacity of the mill was one thousand barrels per day.

All of the transactions between the parties were conducted by written correspondence, and there is no dispute as to what passed between them. That part of the correspondence which reflects the conduct of the parties with reference to the alleged breach of the contract by defendant in failing or refusing to ship the flour occurred on and after March 14, 1907, and will be copied in full, except that the letters concerning an order for shipment of a carload to Jericho, Ark., on March 14, which order was afterwards by agreement cancelled, are omitted. The correspondence related to a carload of flour, ordered by plaintiff on March 14 to be shipped to Paragould, Ark., which he had sold to Bertig Brothers.

"March 14, 1907.

"Majestic Milling Co.,

"Aurora, Mo.

"Dear Sirs:

"Please ship us at once on our contract to Paragould, Ark., *via* Frisco and Cotton Belt:

50 Bbls. Show Me Flour in wood.
75   "       "       "       "   48's
30   "       "       "       "   24's

"Please get the car in transit as soon as possible, and send all papers through the Bank of Jonesboro as usual. The customer to whom we sold this flour has four other cars booked with us, and is one of our very best customers. We usually sell him ten cars at a time. He has been using 'Comet' manufactured by the Eisenmeyer Milling Co., and is their second patent. He has also used a few cars of Builte's 'Pelican,' which is his third grade. We have assured him that 'Show Me' will come up to either of these flours, and if it does he will make us a splendid customer, and we hope we will not be disappointed in the quality of the goods.

"Yours truly,

"Copeland Commission Company."

"March 15,1907.

"Messrs. Copeland Commission Co.,

· "Jonesboro, Ark.

"Gentlemen:

"Beg to acknowledge receipt of your specifications for two cars, one dated March 13, and the other March 14. These shipments will move on dates specified unless we have instructions to ship sooner from you. We do not see much change in the equipment situation. However, we are living in hopes, though we may die in despair. We appreciate your kindness in furnishing the specifications early in order that we may be able to give you better service.

"Yours very truly,

"Majestic Milling Company."

"Aurora, Mo., March 26, 1907.

"Messrs. Copeland Commission Co.,·

"Jonesboro, Ark.

"Gentlemen:

"We are just in receipt of your wire of even date with reference to Paragould car. We immediately wired you 'Badly oversold on 'Show Me.' Do all can. Can't you change specifications any?' By way of explanation will state that our former manager, Mr. Wilson, used such extremely poor judgment and sold long on this special brand, which is causing us no end of trouble. We are gradually getting out of our cramped condition, and if you can in any way change the specifications of this car with some other brand we would certainly appreciate this. This will assist

us greatly in giving prompt shipment. If you cannot do this, we will move car at the earliest possible moment.

"Yours very truly,

"Majestic Milling Company,

"W. H. Roark, Manager."

"Aurora, Mo., March 26, 1907.

"Messrs. Copeland Commission Co.,

"Jonesboro, Ark.

"Gentlemen:

"With reference to the car for Paragould to be shipped at once, we note that this is a straight car of 'Show Me,' our extra fancy brand. Would like to ask if you can in some way use a portion of this car in some other brand, as we are in a very bad condition, and it will be impossible for us to fill this order promptly, as our mill is now full of flour of the high grade, and, in order to manufacture this special grade we are compelled to make more Majesty, and we absolutely have not the room in which to put it. We would consider it a special favor if you could make some change in specifications, and help us out on our badly congested condition.

"We would also be more than pleased to have some specifications on your 1,000-barrel order given us on February 22. For your information will state that our former sales manager, Mr. Wilson, sold us long on this special brand, as we have been doing everything in our power to work ourselves out of this cramped condition, and have succeeded thus far fairly well. However, it seems that we have just about reached the climax, and if we cannot get some of our high patent moved, the 'Show Me' orders are bound to receive some serious delay."

(No signature.)

"March 27, 1907.

"Majestic Milling Co.,

"Aurora, Mo.

"Dear Sirs:

"Our customer at Paragould is unable to change specifications on car of flour. Therefore we will thank you to make every possible effort to get car out soon as possible, and oblige,

"Yours truly,

"Copeland Commission Company."

"Aurora, Mo., March 28, 1907.
"Messrs. Copeland Commission Co.,
    "Jonesboro, Ark.
"Gentlemen:
    "With reference to your letter of the 27th inst., we will await further shipping instructions on the Jericho car as requested. We would, however, be pleased to move this car as soon as possible, as we are very much congested for space.  With reference to the car for Paragould, we are very sorry that specifications could not be changed, but will do our utmost to move this car at an early date, but, as previously stated, our mill is full of high grade flour, and it is utterly impossible for us to fill this order until we can get some storage room in order that we may make the extra fancy which goes in this car.  We would be pleased to have another of your valuable orders at any time.
                    "Yours very truly,
                            "Majestic Milling Company,
                                "W. H. Roark, Manager."

                            "March 29, 1907.
"Majestic Milling Co.,
    "Aurora, Mo.
"Dear Sirs:
    "We are in receipt of your favor of the 26th, and sorry to note your cramped condition on 'Show Me.'  We have already written you the condition our customer is in on this, and beg to say that we would be only too glad to have him take his contract in Majesty, but the class of trade he handles would not warrant him in doing so.  We have another car of 'Show Me' sold for prompt shipment to Jonesboro, but can arrange to delay that some time yet, but the Paragould customer is entirely out, and we will have to arrange to get him a car some place else of a similar grade if you are unable to make shipment.  Kindly advise us by wire upon receipt of this if you can possibly arrange to get this car out tomorrow or Monday.
                    "Yours truly,
                        "Copeland Com. Co."

"Aurora, Mo., March 30, 1907.
"Messrs. Copeland Commission Co.,
　"Jonesboro, Ark.
"Gentlemen:

　"Replying to your kind favor of the 29th, will state that we have just advised you with reference to Paragould car, stating that it would be satisfactory to us for you to cancel this order, and we now confirm the same. As previously stated, we dislike to cancel orders, but wish to thank you for being so kind to us under the circumstances, and assure you that we certainly appreciate your kind consideration. As previously stated, Mr. Wilson got us in very bad shape on this 'Show Me' brand of flour, and we have been doing all in our power to get out of this cramp, but in order to fill any orders of 'Show Me' we must have time. We assure you that when we are able to get out of this position, we will not be so blind as to get into it again.

　"Again thanking you for your kindness, and hoping to hear from you again, we remain,
　　　　　　　　　"Yours very truly,
　　　　　　　　　　　　　"Majestic Milling Company,
　　　　　　　　　　　　　　　　"W. H. Roark, Mgr."

　　　　　　　　　　　　　　　"April 4, 1907.
"Majestic Milling Co.,
　"Aurora, Mo.
"Dear Sirs:

　"We had to buy a car of flour for our Paragould customer and have gotten it to him, but you may keep the order you now have for Paragould entered to ship out about the 20th of this month. Suppose you will be sufficiently caught up with your orders by that time to make shipment. This customer uses about one car every two weeks, and he will have the car we have just shipped to him used up by that time.
　　　　　　　　　　"Yours truly,
　　　　　　　　　　　　　"Copeland Commission Co."

"April 5, 1907.

"Messrs. Copeland Commission Co.,
    "Jonesboro, Ark.
"Gentlemen:
    "Referring to your order given our Mr. Bradford February 16 for 1,000 barrels to be shipped out 60 days from date, we would appreciate it very much if you could give specifications, so that we could get this flour moving, as we are very much congested for room, and the time is getting short.
                    "Yours very truly,
                            "Majestic Milling Company."

"April 8, 1907.

"Majestic Milling Co.,
    "Aurora, Mo.
"Dear Sirs:
    "We wrote you a few days ago to let the Paragould order remain as booked to ship out in ten days. We have a letter from our customer there changing specifications slightly, and request car to come out at once.
    "Please change specifications to read:
    "60 Bbls. Show Me in wood.
    "70 Bbls.    "    "    "  48's.
    "30 Bbls.    "    "    "  24's.
    "Ship to us at Paragould as quickly as possible. Upon the quality of this flour depends much future business, and we hope you will see to it that it is fully up to the standard.
                    "Yours truly,
                            "Copeland Commission Co."

"April 11, 1907.

"Messrs. Copeland Com. Co.,
    "Jonesboro, Ark.
"Dear Sirs:
    "Enclosed please find invoice covering C. O. & G. 10336, flour shipped you today. We would like to have the balance of your valuable specification covering our contract now pending as soon as possible, as the sixty days is about up.
    "Anxiously awaiting your prompt reply, beg to remain,
                    "Yours very truly,
                            "Majestic Milling Company."

This concluded the correspondence up to the date of the expiration of the sixty-day period specified in the contract. A carload of flour, the order for which is contained in the letter of April 8, copied above, was shipped out on April 10, 1907. It is not contended that plaintiff ever gave directions for shipment of flour during the lifetime of the contract after the last shipment on April 10, 1907; nor is it contended that defendant ever expressed any unwillingness or inability to fully perform the contract, further than may be implied from the correspondence hereinbefore copied. The question then arises, does the evidence establish a breach of the contract on the part of defendant? For, if the plaintiff was the first to break the contract, or if he failed to perform his part of the contract by giving directions for shipment of the flour, then he cannot complain of defendant's failure to perform. *Townes* v. *Oklahoma Mill Co.,* 85 Ark. 596. Defendant could not ship the flour until proper directions were given, and plaintiff was at fault in not giving directions, unless defendant first repudiated the contract and refused to deliver the flour in accordance with its terms. If, however, defendant first repudiated the contract and broke it by failure or refusal to deliver the flour after being requested so. to do, then plaintiff was not bound to give further shipping directions, for he had the right to treat the contract as at an end and sue for the damages sustained by reason of the breach. *Spencer Medicine Co.* v. *Hall,* 78 Ark. 336; *John A. Gauger. & Co.* v. *Sawyer & Austin Lbr. Co.,* 88 Ark. 422; Benjamin on Sales (7th Ed.), § 568; *Dingley* v. *Oler,* 117 U. S. 490; *Withers* v. *Reynolds,* 2 Barn. & Ad. 882.

But the rule is well established that, in order for one party to a contract to be justified in treating it as broken by the other, and claiming damages for the breach, there must have been a distinct and unequivocal intention, manifested either by the words or conduct of the other, not to perform the contract. *Spencer Med. Co.* v. *Hall, supra; Armstrong* v. *St. Paul & Pac. Coal & I. Co.,* 48 Minn. 113.

The evidence in this case does not warrant the conclusion that defendant ever refused to. perform the contract. On the contrary, the correspondence shows a willingness on its part to perform, and up to the last it called on plaintiff to furnish specifications for shipping the flour. This was the last word between the parties during the lifetime of the contract. There was some

delay in making shipments, but plaintiff consented to it, and the last request for shipment was promptly complied with. He waived the delay by consenting to it. *Tidwell* v. *Southern Engine & Boiler Works,* 87 Ark. 52.

Nor does the evidence warrant the finding that defendant was unable to deliver the flour. The most shown is that defendant could not promptly deliver the brand of flour called for; but the delay was consented to. There is nothing to indicate that, if delivery of the flour had been insisted on, it could not have been furnished within the lifetime of the contract. The capacity of defendant's mill was one thousand barrels per day, 17 per cent. of the output being of the grade and brand called for, and it is easy to see that performance of the contract with plaintiff was within the capacity of the mill. It is true that defendant had other orders for the same grade of flour; but there is nothing to show that, if plaintiff had insisted on the fulfillment of his orders for that grade, it could not have been done. He had no right to treat defendent's request for delay as an abandonment of the contract, especially when he consented to the delay.

It is unnecessary to decide whether, according to the terms of the contract, defendant had the right to delay shipment until the last day of the specified time; for no further requests for shipment were made, and plaintiff is in no attitude to complain. Upon the whole, we are of the opinion that the verdict of the jury is not sustained by the evidence. The judgment is therefore reversed, and the cause remanded for new trial.