WILLIAMS *v.* NEWKIRK.

Opinion delivered December 20, 1915.

1.  SALES—SALE OF JACK—WARRANTIES AS TO BREEDING.—Appellant sold a
    jack to appellee, warranting that he would get a certain percent-
    age of mares with foal, during a certain period. *Held,* in an ac-
    tion by appellee to recover damages for breach of warranty, that
    the evidence justified the jury in finding that the jack had not
    met the requirements of the warranty.

2.  EVIDENCE—COPY OF LETTER—ACTION FOR BREACH OF WARRANTY.—In
    an action by the buyer for breach of warranty as to the breeding
    ability of a jack, it is competent for the buyer to introduce in
    evidence a copy of a letter written by him to the seller, com-
    plaining of the jack, written in response to one from the seller to
    the buyer, with reference to payment for the jack, which was
    already introduced in evidence.

3.  SALE OF JACK—WARRANTY—BREEDER.—The warranty in the sale of
    a jack was that the jack would get a certain percentage of mares
    with foal, during the years 1912 and 1913. *Held,* a requested in-
    struction was properly refused, which limited the issue of dam-
    ages to the capacity of the jack at the date of sale.

4.  SALE OF JACK—WARRANTY OF PERFORMANCE—DUTY OF CARE BY BUYER.
    —A contract for the sale of a jack warranted a certain per-
    formance by him as a breeder, and required the buyer to use
    reasonable care in his management and keep. In an action by the
    buyer for breach of warranty as to performance, the court properly
    told the jury that they should find for the buyer if they found a
    breach of warranty as alleged, "unless you further believe  *  *  *
    that said failure to foal on the part of said jack was caused by the
    lack of reasonable care of said jack by the plaintiff or by reason
    of the negligence of said plaintiff in the management of said jack."

5.  SALES—WARRANTY—COMPLIANCE WITH CONDITIONS BY BUYER—BURDEN
    OF PROOF.—It is necessary for the buyer of a chattel to allege and
    prove, as a condition precedent to his right to recover on a war-
    ranty in the contract of sale, that he has complied with his part
    of the contract which was contained in the same writing with the
    warranty.

6.  SALES—SALE OF JACK—BREACH OF CONDITIONS—ERRONEOUS INSTRUC-
    TION—HARMLESS ERROR.—A contract for the sale of a jack war-
    ranted him as a breeder, and required the buyer to give him rea-
    sonable care and management. In an action for breach of the
    warranty the trial court erroneously instructed the jury that the
    burden was on the seller to show that the buyer had not used
    reasonable care in the management and care of the jack. *Held,*
    the error was harmless, as the evidence showed that the buyer
    had properly managed and cared for the jack.

7. EVIDENCE—CONDITION OF ANIMAL—RELEVANCY.—Testimony as to the condition of a jack as seen by witness in 1914, is irrelevant in an action by the purchaser of the jack against the seller thereof, for the breach of a warranty that the jack would breed a certain percentage of colts in 1912 and 1913.

8. SALE OF JACKS—WARRANTY AS TO PERFORMANCE—BREACH—INCOMPETENT TESTIMONY—HARMLESS ERROR—DAMAGES.—In an action for breach of warranty as to breeding capacity, in a contract for the sale of a jack, testimony by the plaintiff as to damage sustained by reason of the failure to get the mares of his customers with foal, is incompetent; but the error committed by the court was cured, when the court charged the jury, that the measure of plaintiff's damages would be the difference in the value of the jack as represented by the seller to the buyer, at the time of the sale, and the real or actual value of said jack for breeding purposes at the time of the sale.

9. APPEAL AND ERROR—ERRONEOUS INSTRUCTION AS TO DAMAGES—HARMLESS ERROR.—In an action for breach of warranty of a jack, the court erroneously charged the jury that they could assess damages up to $800. Under the evidence the plaintiff paid that sum for the jack and sold him for $200. *Held,* the error was not prejudicial where the jury returned a verdict for $500.

Appeal from Randolph Circuit Court; *J. B. Baker,* Judge; affirmed.

*T. W. Campbell,* for appellant; *W. L. Pope* and *W. F. Spikes,* of counsel.

1. Appellee wholly failed to prove a breach of the warranty.

2. The alleged letter, or copy, was not admissible in evidence as no foundation was laid. 51 Ark. 509; 12 *Id.* 692; 11 *Id.* 504.

3. It was error to refuse instructions asked by appellant. He was entitled to an instruction upon his theory of the case that appellee did not properly take care of the jack and that the use of an impregnator was responsible for the failure to measure up to the warranted standard of breeding. 175 Mass. 304; 43 S. W. 812; 44 *Id.* 893; 54 Ill. 486; 58 Neb. 80.

4. The court erred in its instructions as to the burden of proof and that it shifted to defendant to show appellee had failed to use due care, etc. 88 Ark. 422; 90 *Id.* 85; 169 Ill. 606; 10 Ind. 199; 3 Ark. 212, 324.

5. The most prejudicial error was when the court instructed the jury that "any evidence concerning the jack except at the breeding season, etc., was withdrawn." 42 Ark. 542; 140 Ind. 354; 147 U. S. 150.

6. Testimony that one of the mares bred died was highly prejudicial in that it tended to support a claim for damages in excess of the legal measure, viz.; the difference between the amount paid for the jack and his real worth. 31 Kan. 92; 25 Ark. 164; 21 *Id.* 349.

7. It is error, always, to instruct a jury they may award damages in any sum not to exceed the amount sued for, regardless of the evidence. 174 Ill. 398; 51 N. E. 811.

*S. A. D. Eaton* for appellee; *J. Mulloy* and *W. A. Jackson,* of counsel.

1. All the facts were submitted to the jury under proper instructions and this court will not disturb the verdict. 51 Ark. 467; 46 *Id.* 141.

2. The copy of the letter was admissible in evidence, a proper foundation having been laid.

3. There is no error in the instructions. 31 Ark. 103; 64 *Id.* 613; Kirby's Digest, § 3106. Negligence must be alleged and proven. 2 Cooley, Torts, 1414; 1 Sh. & Redf. on Negl. 57; 16 Cyc. 927; 31 *Id.* 678. On the measure of damages see 25 Ark. 164; 21 *Id.* 349. If there were errors they were harmless.

Wood, J. Appellee sued appellant for a breach of a written warranty, alleging that the appellant, on February 21, 1912, sold to appellee a certain jack for $800, warranting that the jack, for the season of 1912, would foal 40 per cent of all breeding mares under ten years of age which had not missed coming with foal over two seasons, and would for the season of 1913, foal 60 per cent of all breeding mares under ten years of age which had not missed coming with foal over two seasons. The warranty was upon condition that appellee "take good care of said jack and treat him same as other jacks and use all necessary precaution as is usually done in this section of country." The complaint alleged that appellee had

complied with this condition, and that the jack "had wholly failed to foal the percentage of mares as warranted for the seasons of 1912 and 1913;" that the jack was worthless, and that appellee had offered to return same to appellant and appellant refused to receive him, and that appellee had been damaged in the sum of $800.

Appellant admitted the sale of the jack, as alleged, but denied the breach of warranty, and set up that if the jack failed to put the mares in foal as warranted that this was because of abuse and mistreatment of the jack by the appellee, and because of a lack of skill and care in handling the jack when breeding the mares to him.

Appellant first contends that there was no evidence to sustain the verdict because the jack failed as to the percentage of mares he was to get with foal during the years 1912 and 1913. If there was evidence tending to prove that the jack failed to meet the requirements of the warranty in this respect for either of the years 1912 or 1913 the warranty would be broken, and if the appellee complied with the conditions of the warranty as to the treatment of the jack his right of action would be complete.

Appellee testified that seventy or seventy-one mares were bred to the jack in 1912, and that "out of that number he foaled nine or ten mares, and that "thirty-nine or forty mares were bred in the season of 1913." Appellee was asked "How many did he foal?" and answered, "four or five." Appellee then mentions four mares bred to the jack in 1913 which were within the requirements of the warranty as to breeding qualities, and stated that only one of the four got with foal.

(1) It could serve no useful purpose to set out the evidence in detail as to the different mares that were bred to the jack in controversy during the years of 1912 and 1913. The testimony of the appellee certainly warranted the jury in finding that for the year 1913 the jack did not foal the required 60 per cent of mares served by him; for, even if it be conceded that out of a total of forty served for that year only four were shown to be of the required class, it was shown that he only got with foal one

of this number, and that of the remaining thirty-six only three were got with foal. Therefore counsel for appellee is correct in stating that the evidence justified the jury in finding that, assuming that the four mares which got with foal were all of the designated class, still the jack only foaled four out of the total of seven of the designated class, or 57 1-7 per cent, for the season of 1913, and therefore did not meet the requirements of the warranty of 60 per cent.

(2)    A copy of a letter from the appellee to appellant, dated December 25, 1912, in which appellee complained to appellant that the jack was not as guaranteed in the written warranty, and stated that if appellant compelled appellee to pay the notes then the latter would ask damages, was introduced in evidence by the appellee. Appellant objected to the "reading of the copy of the letter" to Williams (appellant). Appellant admitted writing a letter on December 22, which was introduced in evidence, in which appellant had referred to the notes given as the purchase price for the jack, and complaining that appellee had violated the agreement by not handling the jack properly, and that appellant was going to insist on payment of the notes. Appellant stated that he had no recollection of receiving any such letter as that written by the appellee to him.

The court did not err, under these circumstances, in permitting the copy of the letter to be read. The jury were warranted in inferring, under the circumstances, that the letter objected to was in response to the letter written by the appellant to the appellee on December 22, 1912, and could not have prejudiced the rights of appellant.

(3)    Appellant complains because the court refused to grant his prayer for an instruction to the effect that before appellee could recover it was necessary for him to show by a preponderance of the evidence that the jack alleged to have been sold to plaintiff "did not, at the time of the sale, possess the capacity vouched for in the warranty." The warranty was that the jack would get with foal 40 per cent of the mares of the designated class

bred to him for the season of 1912 and 60 per cent for the season of 1913. Under the appellant's prayer the issue would have been narrowed to the capacity of the jack "at the time of the sale," whereas the real issue was whether the jack possessed the capacity vouched for during the seasons of 1912 and 1913, as specified in the warranty.

(4)    The appellant asked the court to tell the jury that if they found that the failure of the jack to foal the mares was caused by the use of an impregnator by the appellee, and not on account of lack of breeding capacity in the jack, that they should find for the appellant. The court refused to so instruct the jury, and appellant complains that this was reversible error. But the court, in an instruction given at the instance of the appellee, fully and correctly defined the issue, and told the jury that if they found there was a breach of the warranty in the manner alleged that their verdict should be in favor of the appellee, "unless you further believe from the evidence that such failure to foal on the part of said jack was caused by the lack of reasonable care of said jack by the plaintiff or by reason of the negligence of said plaintiff in the management of said jack."

This instruction was sufficient to cover the provisions of the warranty requiring the appellee to take good care of the jack and to use all necessary precaution in having him serve mares. The court did not err in refusing to direct the jury specifically as to the use of an impregnator as tending to show a breach of the warranty on the part of the appellee.

At the instance of the appellee, the court instructed the jury as follows: "You are further instructed that the burden rests upon the plaintiff to show, by a preponderance of the evidence, that such written agreement and warranty were given by said defendant to said plaintiff as mentioned in these instructions, and that said jack has failed to meet the requirements of said agreement and warranty; after which the burden shifts to the defendant to show by a preponderance of the evidence that such failure on the part of the jack was caused by the lack

of proper care of said jack on the part of plaintiff or by reason of the negligence of the plaintiff.''

(5)    The latter clause of the instruction, in which the court told the jury that the burden shifted to the appellant to show by a preponderance of the evidence that the failure on the part of the jack was caused by lack of proper care of said jack on the part of appellee or by reason of the negligence of the appellee, was erroneous. Under the written contract upon which the appellee sued to recover damages the burden was upon him and did not shift to the appellant. It was necessary for the appellee to allege and prove, as a condition precedent to his right to recover on the warranty, that he had complied with his part of the contract which was contained in the same writing with the warranty.

(6)    Under the contract the warranty could not be enforced unless the appellee complied with the provisions of the contract on his part, for, as we view the contract, appellee's obligation was a condition precedent to the enforcement of the warranty of the appellant. The appellee had the affirmative of the issue all the way through, and the burden was not shifted to appellant. Kirby's Dig., § 3106; *John A. Gauger & Co.* v. *Sawyer & Austin Lumber Co.,* 88 Ark. 422. But as we view the record, the undisputed testimony shows that appellee had fully complied with the terms of the contract, and, as we have stated, if the jack failed to meet the requirements of the warranty for the year 1913, the appellee, having complied with the contract on his part, would be entitled to recover damages for a breach of the warranty. There is nothing in the evidence as abstracted by the appellant tending to prove that the appellee had failed to take good care of the jack during the breeding season of 1913, or that he had failed to use ''all the necessary precaution as is usually done in this section of the country.'' True, one witness on the part of appellant testified to the effect that he saw the jack a few days before he was sold to the appellee and that at that time he was a fine looking jack and in good shape in every way. He next saw the jack about the middle of ''last January.'' (He does not state

what year, but dating from the time of the trial would make it middle of January, 1914). He states that the jack at that time was thin and about to give out; was much thinner than he was when he saw him just before he was sold to appellee. He further stated that if a jack was allowed to get down thin in flesh as the jack was when he last saw him it took away his ambition and lessened his ability to foal a mare. There is nothing in this testimony tending to show that appellee had failed to comply with his part of the contract as to care in handling the jack. On the other hand the appellee testified that he had kept studs and jacks in his barn for fifteen years, and that he gave the jack as good care as any jack could get.

True appellee stated that in the year 1912 he had used an impregnator, and the appellant testified that it was not customary among the breeders of the country to use an impregnator, but the appellee testified that he did not use the impregantor during the year 1913.

Under the testimony, as above set forth, the error in the latter clause of the instruction in regard to the burden of proof was not prejudicial to appellant. There was no testimony conflicting with that of the appellee to the effect that he had given the jack as good care as any jack could get, and this was sufficient to meet the burden of showing that he had complied with the contract on his part.

(7) The court did not tell the jury that "the evidence given by witness Mays or by any witness concerning the jack at the breeding season, or at any breeding season except the ones in question, was withdrawn from their consideration." This instruction was but limiting the evidence to the issue. The testimony of witness Mays to the effect that he saw the jack in 1914 and that he was then in poor condition did not show or tend to show what the condition of the jack was during the breeding season of 1912 and 1913, and such testimony was therefore irrelevant.

(8) Appellant complains because the court permitted the appellee to testify to the effect that he had suffered a great deal of damage because he had bought

this jack and put him to some of the best mares in the country and some of his customers had turned against appellee because the jack would not get their mares with foal; that the fact that this jack was not a good breeder had crippled the reputation of his barn; that he had had good breeding jacks before this, and got this one thinking he was getting as good a one as the State could afford. And further, because the court permitted appellee to testify that of the mares bred to the jack in 1913 he only foaled four or five, and one of them died."

The court instructed the jury, at the instance of the appellant, that if they should find for the appellee, the measure of his damages would be the difference in the value of the jack as represented by the defendant to the plaintiff at the time of the sale and the real or actual value of said jack for breeding purposes at the time of the sale.

The above testimony concerning the damage to appellee's breeding stables was irrelevant; and the testimony that one of the mares that was foaled by the jack in 1913 had died was also irrelevant. But, in view of the above instruction, the error was cured, as it limited the amount of plaintiff's damages to the difference between the value of the jack as represented by the defendant at the time of the sale and the real or actual value of the jack for breeding purposes at that time. Under the above instruction the error in admitting the testimony complained of could not have prejudiced the appellant.

(9) The court, over the objection of appellant, instructed the jury that if they should find for the appellee they should find for him in any sum not to exceed $800. The appellee paid $800 for the jack and alleged that he was damaged in that sum. Appellee admitted that he sold the jack for $200. Therefore, the verdict of the jury, under the pleadings and the evidence, could not have been for more than $600, but their verdict was for only $500, thus showing that they were not in any way prejudiced by the instruction telling them that they could find for the appellee in any sum not to exceed $800. If the ver-

dict had exceeded the sum of $600, under the evidence, the appellant would have been prejudiced by the instruction, but the fact that they returned their verdict for a less sum shows that they were not prejudiced.

The record on the whole case is free from prejudicial error, and the judgment is therefore affirmed.