CHAS. F. LUEHRMANN HARDWOOD LUMBER COMPANY *v.*
COATS & GREEN.

Opinion delivered May 10, 1920.

1. SALES—BREACH OF CONTRACT BY BUYER.—Where a contract for the sale of lumber stipulated that inspection and payment should be made at the point of shipment, and the buyer refused to make such payment until the lumber was delivered, this constituted a breach of the contract.

2. SALES—EFFECT OF BREACH OF CONTRACT.—Where the buyer of lumber committed a breach of the contract by refusing to pay for the lumber at the point of shipment, the seller was not liable for failure thereafter to perform the contract.

3. APPEAL AND ERROR—CONCLUSIVENESS OF COURT'S FINDINGS.—Findings of fact by the chancellor which do not appear to be clearly against the perponderance of the evidence will not be disturbed on appeal.

Appeal from Lawrence Chancery Court, Eastern District; *Lyman F. Reeder,* Chancellor; affirmed.

*Oliver & Oliver,* for appellant.

1. According to the finding of the court below the lumber replevied belonged to appellant. They had bought it, inspected it, taken possession of, tagged and

insured it. It was their property and if it had been fully
paid for appellant would be entitled to judgment against
appellee for its full value. As it had not been fully paid
for, and as the payments that had been made on it were
applied to the payment of the lumber received by appel-
lant, appellant is entitled to judgment against appellees
for the difference between the purchase price of the lum-
ber and its value at the time of its conversion, which the
proof shows was on every grade from $10 to $12 per
thousand feet. So, regardless as to who breached the
contract, appellant should recover not less than $10 per
thousand on the lumber converted, or $140. The court
erred in refusing to find in appellant's favor on this
point.

2. The finding of the court below was that appellant
had breached the contract with appellees by its failure
to place a regular stock order for additional lumber and
by its failure and refusal to inspect and take up lumber
on the yards and to pay therefor in cash when loaded,
and that this default in the performance of the condi-
tions of the contract released defendants from further
performance on their part. The evidence is clearly con-
tradictory to the court's findings on these propositions.
The only breach of contract assigned or pleaded by ap-
pellees is that appellant agreed to make advances and
failed and refused to do so as agreed upon by the parties.
The contract under which appellant bought the lumber,
and admitted to be the contract by all parties, says that
the lumber is to be put on sticks and shipped when or-
dered out, terms to be 2 per cent. off for cash *when
loaded*. The evidence shows that the court erred in its
findings. There is no evidence to sustain its findings
and the decree should be reversed.

3. The measure of damages is the difference be-
tween the contract price at the time and place of delivery
and the market price on the date on which appellant first
learned or was notified that appellees would refuse to
comply with their contract. 57 Ark. 257; 79 *Id.* 338; 117
*Id.* 442; 121 *Id.* 150.

The proof is uncontradicted that the market value of the lumber at Ponder's Switch, where the lumber was to be delivered on March 8, 1918, the date on which appellees notified appellants that they would not comply with their contract, was $10 per thousand feet above the contract price. They failed to deliver 343,016 feet which they agreed to deliver and were liable for $3,430.16, from which is to be deducted $482.35, the amount which appellant owed on the lumber received, and appellant should have judgment for $2,947.81, with 6 per cent. interest from March 1, 1918.

*Smith & Gibson,* for appellees.

The evidence fully sustains the findings of the chancellor and the decree should be affirmed.

SMITH, J. Appellant is a corporation, with its situs in St. Louis, Missouri, and is a dealer in lumber. Appellees were a copartnership, and owned and operated a sawmill at Ponder's Switch, about six miles east of Hoxie on the Frisco railroad. Appellant and appellees entered into a contract in writing on June 6, 1917, whereby appellees, for a priece there specified, agreed to saw for appellant 400,000 feet of gum lumber. The contract contained the following provisions:

"To begin cutting by 1st of July, and complete the order in three months. Lumber to remain on sticks from 90 to 120 days, or as ordered loaded by C. F. Luehrmann Hardwood Lumber Company.

"This order to be followed up with regular stock order from Chas. F. Luehrmann Hardwood Lumber Company."

On August 14, 1917, appellant advanced $500, and on September 9, 1917, made an additional advance of $250, and on each occasion took a bill of sale for certain piles of lumber therein described. Appellees contended that these bills of sales were mere mortgages intended to secure the advances made; but the court found that they were in fact bills of sale, and appellees have prosecuted no appeal from that finding.

A controversy arose between the parties, and appellant brought suit in replevin for the lumber covered by the bills of sale, and by an amended complaint prayed judgment for damages for breach of the contract to deliver lumber. An answer was filed to the original complaint, in which ownership of the lumber replevied was denied; and while no answer appears to have been filed to the amended complaint, its allegations were treated as being in issue. The cause was transferred to the chancery court, and was tried without any question of misjoinder of causes of action having been made, and as these causes could, under the act of May 11, 1905 (Acts 1905, page 798), have been consolidated and heard together, had they been brought separately, we proceed to a consideration of the merits of the questions presented, as did the court below.

Appellees resisted the claim for damages upon the ground that appellant had breached the contract by a failure to comply with its terms and had thereby absolved appellee from the legal duty of continued performance. The court below expressly found the fact to be that appellant had failed to make advances upon the lumber; but it does not appear that the contract contained any such requirement.

Under the order of delivery which issued in the cause appellant took possession of the piles of lumber contained in the bills of sale, and, after inspection, shipped it out. The lumber thus shipped measured out 56,984 feet, whereas in the bills of sale the piles so shipped were estimated to contain 70,000 feet, and judgment was prayed for the loss of profits sustained on this difference of approximately 14,000 feet. As to the lumber covered by the bills of sale the court found that the sums of money there recited as paid were advanced as portions of the purchase money, and that nothing remained to be done except to grade the lumber according to the "National Rules," as provided by the contract between the parties, and to pay the balance of purchase money when so de-

termined. The court found this balance to be $482.33, and rendered judgment in appellee's favor for that amount.

The testimony showed an enhancement of from ten dollars up per thousand in the market price of the lumber; but the court refused to award any sum as damages for the deficiency of 14,000 feet for the reason that the recitals in the bills of sale as to amount of lumber sold was a mere estimate, and the bills of sale conveyed only the lumber in the piles—much or little, and we are unable to say that that finding is clearly against the preponderance of the evidence.

The court also expressly found the fact to be that appellant had failed to furnish regular stock orders for additional lumber, and·had failed to pay in cash for lumber when loaded, and that these defaults in the performance of the conditions of the contract released appellees from further performance on their part, and the correctness of this finding presents the controlling question in the case.

The senior member of the firm of Coats & Green was also the senior member of the firms of Coats & Inman and Coats & Milner, and appellees insist that this was but one partnership, in which Milner bought Inman's interest and, in turn, sold to Green. It is not clear, however, that this statement is correct; and it does appear that Coats operated at least two mills, and one of them under the firm name of Coats & Milner. That firm also had a contract with appellant to saw lumber, and there was a controversy over its terms; but it would, of course, make no difference whether appellant breached its contract with Coats & Milner if it in fact complied with the terms of the contract it had with appellees.

The record contains correspondence between the parties, which shows that the differences between them became accentuated as the correspondence progressed. Appellees were complaining of appellant's failure to inspect and load out the lumber, and in a letter dated March 7, 1918, appellees declared themselves absolved from fur-

ther obligation to perform because of breaches of the contract on appellant's part. The circumstances stressed in this letter was that a draft drawn to cover three cars of lumber (which had been inspected and loaded and shipped by appellant's representative) had been drawn on, and dishonored by, appellant. A reply to this letter was written in which it was stated that, "While, if the writer had been in town when this draft was returned, might not have returned it, still I am of the opinion that, without any advice from Mr. Alexander, to the effect that you were going to draw a draft on us for the stock, and if he had advised us you were going to ship this stock subject to delivered inspection, and taking in consideration the fact that the office had no means of knowing how you are in your inspection, it would appear to be perfectly all right for the office to have had a doubt as to the advisability of paying the draft without having specific instructions." This letter also stated that, "We think, however, that we should see the lumber before we pay for it practically in full." The imposition of this condition in regard to inspection operated as a demand that final inspection should be made at the point of delivery, rather than at the point of shipment, and the contract did not give that right. By the terms of the contract lumber was "to be taken up on grades, National Rules to govern (at prices stated), all f. o. b. a 13-cent rate to St. Louis," and the terms of payment specified in the contract were "2 per cent. for cash when loaded." The lumber was "to be taken up" at the mill, and the contract provided how the inspection would be made, and the insistence that the inspection should be made otherwise or elsewhere, as a condition precedent for payment, while the contract required payment when loaded, constituted a breach of the contract.

One can not refuse to perform a contract according to its terms, and thereafter insist that the other party perform. So if, as the court found, appellant had failed to perform the contract, either by furnishing specifica-

tions for sawing, or in paying for lumber taken up, then it could not thereafter demand, as damages, the profit which would have accrued had appellees continued in the performance of the contract, notwithstanding appellant's prior breach thereof. *Gauger* v. *Sawyer & Austin Lbr. Co.,* 88 Ark. 422; *Harris Lbr. Co.* v. *Wheeler Lbr. Co.,* 88 Ark. 491; *Rodgers* v. *Wise,* 106 Ark. 310, 43 L. R. A. (N. S.), 1009.

The court's finding of fact appears to be not clearly against the preponderance of the evidence, and will, therefore, be affirmed.